# EXHIBIT A

The information available on Case.net is provided as a service and is not considered an official court record.

Case.net:26SL-CC04730 - GREGORY A. DELINE V. REGIONS BANK, ET AL. (E-CASE) - Docket Entries

| Respond to Selected Documents |          Sort by date: Descending Ascending          Display options: All Entries   ⌄

**08/07/2026**

**Entry of Appearance Filed**

Entry of Appearance on behalf of Stone T. Hendrickson; Electronic Filing Certificate of Service.
>    **Filed By:** STONE HENDRICKSON
>    **On Behalf Of:** REGIONS BANK INC

**07/20/2026**

🔒 **Proposed Order Filed**

Order.
>    **Filed By:** THOMAS M. HARRISON
>    **On Behalf Of:** GREGORY A DELINE, GKD MANAGEMENT LP DBA A&G COMMERCIAL TRUCKING, AMEGA SALES, INC., MIDWEST MORTGAGE ASSOCIATES CORPORATION DBA TOTAL LENDING, AMEGA PERSONNEL SERVICES INC., TRANSCO EXPRESS CORPORATION

**Motion Filed**

MOTION FOR PRO HAC VICE ADMISSION OF STEPHEN E. FRANK; Supreme Court Payment Receipt.
>    **Filed By:** THOMAS M. HARRISON
>    **On Behalf Of:** GREGORY A DELINE, GKD MANAGEMENT LP DBA A&G COMMERCIAL TRUCKING, AMEGA SALES, INC., MIDWEST MORTGAGE ASSOCIATES CORPORATION DBA TOTAL LENDING, AMEGA PERSONNEL SERVICES INC., TRANSCO EXPRESS CORPORATION

🔒 **Proposed Order Filed**

Order.
>    **Filed By:** THOMAS M. HARRISON
>    **On Behalf Of:** GREGORY A DELINE, GKD MANAGEMENT LP DBA A&G COMMERCIAL TRUCKING, AMEGA SALES, INC., MIDWEST MORTGAGE ASSOCIATES CORPORATION DBA TOTAL LENDING, AMEGA PERSONNEL SERVICES INC., TRANSCO EXPRESS CORPORATION

**Motion Filed**

MOTION FOR PRO HAC VICE ADMISSION OF MANISHA M. SHETH; Attachment - Supreme Court Payment Receipt.
>    **Filed By:** THOMAS M. HARRISON
>    **On Behalf Of:** GREGORY A DELINE, GKD MANAGEMENT LP DBA A&G COMMERCIAL TRUCKING, AMEGA SALES, INC., MIDWEST MORTGAGE ASSOCIATES CORPORATION DBA TOTAL LENDING, AMEGA PERSONNEL SERVICES INC., TRANSCO EXPRESS CORPORATION

**07/16/2026**

**Corporation Served**

Document ID - 26-SMCC-8975; Served To - REGIONS BANK INC; Served Date - 07/10/2026; Served Time - 16:05:28; Service Type - SD; Reason Description - SERV; Service Text -

**07/08/2026**

**Summons Issued-Circuit**

Document ID: 26-SMCC-8975, for REGIONS BANK INC Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**Summons Issued-Circuit**

Document ID: 26-SMCC-8974, for REGIONS FINANCIAL CORPORATION Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**Request Filed**

Request for Summons.
>    **Filed By:** THOMAS M. HARRISON
>    **On Behalf Of:** GREGORY A DELINE, GKD MANAGEMENT LP DBA A&G COMMERCIAL TRUCKING, AMEGA SALES, INC., MIDWEST MORTGAGE ASSOCIATES CORPORATION DBA TOTAL LENDING, AMEGA PERSONNEL SERVICES INC., TRANSCO EXPRESS CORPORATION

**07/01/2026**

**Judge Assigned**

DIV 3

**Filing Info Sheet eFiling**


>    **Filed By:** THOMAS M. HARRISON

**Note to Clerk eFiling**


>    **Filed By:** THOMAS M. HARRISON

**Pet Filed in Circuit Ct**
Petition

**Filed By:** THOMAS M. HARRISON

**On Behalf Of:** GREGORY A DELINE, GKD MANAGEMENT LP DBA A&G COMMERCIAL TRUCKING, AMEGA SALES, INC., MIDWEST MORTGAGE ASSOCIATES CORPORATION DBA TOTAL LENDING, AMEGA PERSONNEL SERVICES INC., TRANSCO EXPRESS CORPORATION

Case: 4:26-cv-01269    Doc. #:  1-1    Filed: 08/07/26    Page: 3 of 51 PageID #: 21

**Pet Filed in Circuit Ct**
Petition

**Filed By:** THOMAS M. HARRISON

**On Behalf Of:** GREGORY A DELINE, GKD MANAGEMENT LP DBA A&G COMMERCIAL TRUCKING, AMEGA SALES, INC., MIDWEST MORTGAGE ASSOCIATES CORPORATION DBA TOTAL LENDING, AMEGA PERSONNEL SERVICES INC., TRANSCO EXPRESS CORPORATION

**26SL-CC04730**

Electronically Filed - St Louis County - July 01, 2026 - 02:35 PM

## IN THE CIRCUIT COURT OF
## ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Gregory A. DeLine, Amega Sales, Inc., ) | |
| GKD Management L.P. d/b/a ) | |
| A&G Commercial Trucking, ) | |
| Midwest Mortgage Associates Corporation, ) | |
| d/b/a Total Lending Concepts, Inc. ) | |
| Amega Personnel Services Inc., ) | |
| Transco Express Corp., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. _____ |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| Regions Bank Inc., ) | |
| ) | |
| Defendant. ) | |

## PETITION

## NATURE OF THE ACTION

1.      This case is about a bank that promoted itself as "do[ing] what is right," "put[ting] people first," and "focus[ing] on its customer[s]", but that instead misled its clients and then cut a deal with the government to escape the consequences. Regions Bank Inc. ("Regions") encouraged one of its longstanding clients, Gregory A. DeLine, to obtain a loan under the Paycheck Protection Program ("PPP") that it knew exceeded the amount for which he was eligible, and later recommended that the government forgive that same loan. Regions paid the United States millions of dollars to settle its own misconduct, while abandoning Mr. DeLine to face the federal government alone.

2.      When the PPP launched in the first weeks of the COVID-19 pandemic, Mr. DeLine turned to Regions, his longtime bank and investment manager, for a loan to ensure that he could

Electronically Filed - St Louis County - July 01, 2026 - 02:35 PM

continue to pay his workers during the pandemic. As a borrower, Mr. DeLine could not directly interact with the Small Business Administration ("SBA") to obtain that loan. Instead, lenders, like Regions, controlled the application and the forgiveness decision. Mr. DeLine relied on Regions to instruct him during the application and forgiveness process.

3.      Regions had been Mr. DeLine's primary bank for years, holding numerous deposit accounts, serving as the primary lender for Mr. DeLine's businesses as they grew, and providing Mr. DeLine personally with wealth management services.

4.      During the application process for the PPP loan, Regions requested that Mr. DeLine provide payroll information for the employees and independent contractors who worked for him. Regions used those costs to determine his eligible loan amount.

5.      Within days *after* Mr. DeLine submitted the loan application, however, the SBA confirmed that independent-contractor pay could *not* be included in calculating loan amounts. Mr. DeLine's relationship manager at Regions acknowledged as much in writing to Mr. DeLine. Yet Regions advised Mr. DeLine not to alter or amend the application. Instead, the bank told him to "error [sic] on paying back any amount that is not forgiven." In fact, Mr. DeLine *could not* himself amend the application. Regions alone controlled the submission to the SBA.

6.      Later, when Mr. DeLine tried to deduct excess loan proceeds on his forgiveness application, Regions instead recommended, and the SBA granted, forgiveness of the *entire* loan.

7.      Years later, the government concluded that the loan should not have been approved and had not, in fact, been eligible for forgiveness. On May 19, 2026, Regions paid the United States more than $4.9 million to settle allegations concerning its wrongdoing, and agreed to cooperate in the government's investigation of others.

Electronically Filed - St Louis County - July 01, 2026 - 02:35 PM

8.     Mr. DeLine is now a defendant in a federal fraud action, faces a demand to repay millions of dollars the government contends he should not have received, and has incurred substantial legal fees, all because he followed the guidance of his own bank and his longtime banker. This action seeks to hold Regions accountable for the false and misleading directions it provided to Mr. DeLine and the harm it caused to him and his businesses.

## THE PARTIES

9.     Plaintiff Gregory A. DeLine is an individual who resides in Columbia, Boone County, Missouri. Mr. DeLine owns and operates a number of businesses. They include: GKD Management, L.P., a commercial trucking business; Midwest Mortgage Associates Corporation, ("MMAC"), a company that originates residential mortgage loans; Amega Sales, Inc. a company that sells manufactured homes; Amega Personnel Services, Inc., a payroll service company; and Transco Express Corp., a commercial trucking business.

10.     Plaintiff GKD Management, L.P. d/b/a A&G Commercial Trucking ("A&G") is an Arizona limited partnership registered to conduct business in the State of Missouri, with its principal place of business located in Ashland, Missouri. A&G has been harmed by Regions' conduct described in this Petition.

11.     Plaintiff Midwest Mortgage Associates Corporation d/b/a Total Lending Concepts, Inc. ("MMAC") is a Colorado corporation registered to conduct business in the state of Missouri, with its principal place of business located in Colorado Springs, Colorado. MMAC has been harmed by Regions' conduct described in this Petition.

12.     Plaintiff Amega Sales, Inc. ("Amega Sales") is a Missouri corporation with its principal place of business located in Ashland, Missouri. Amega Sales has been harmed by Regions' conduct described in this Petition.

3

Electronically Filed - St. Louis County - July 01, 2026 - 02:35 PM

13.    Plaintiff Amega Personnel Services, Inc. ("APSI") is a Missouri corporation with its principal place of business located in Ashland, Missouri. APSI has been harmed by Regions' conduct described in this Petition.

14.    Plaintiff Transco Express Corp. ("Transco") is an Alabama corporation registered to conduct business in the state of Missouri, with its principal place of business located in Ashland, Missouri. Transco has been harmed by Regions' conduct described in this Petition.

15.    Defendant Regions is a commercial bank headquartered in Birmingham, Alabama. Regions is a wholly-owned subsidiary of Regions Financial Corporation, a bank holding company incorporated in the State of Delaware, and headquartered in Birmingham, Alabama. At all relevant times, Regions participated as an approved lender in the Paycheck Protection Program, described further below, and acted through its employees and agents, including Mark Stapleton, a Senior Relationship Manager in Commercial Banking, and Lisa Beck, a Commercial Relationship Assistant. Stapleton and Beck both worked out of a Regions' office located in St. Louis, Missouri.

## JURISDICTION AND VENUE

16.    This Court is a court of general jurisdiction and has subject matter jurisdiction over this action.

17.    This Court has personal jurisdiction over Regions, which has sufficient minimum contacts with the State of Missouri and has purposefully availed itself of Missouri's jurisdiction. Regions transacts substantial business within Missouri, including by providing commercial banking services and PPP loans to Missouri residents and businesses, and is subject to personal jurisdiction under Missouri law. Mo. Rev. Stat. § 506.500.

18.    Venue is proper in the Circuit Court of St. Louis County, Missouri as the individuals who solicited, instructed, and assisted Mr. DeLine and his companies to obtain the PPP loan were located at a Regions branch in St. Louis, Missouri.

4

Electronically Filed - St Louis County - July 01, 2026 - 02:35 PM

**FACTUAL ALLEGATIONS**

## I.     The Paycheck Protection Program and the Role of Lenders

19.     In response to the economic disruption caused by the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which established the Paycheck Protection Program. The PPP authorized the SBA to guarantee forgivable loans made by participating private lenders to eligible small businesses to cover payroll and certain other costs, with the purpose of enabling employers to continue paying their workers during the pandemic.

20.     Under the CARES Act, a business was generally eligible for a PPP loan if it employed not more than 500 employees, or otherwise satisfied the applicable SBA size standard. 15 U.S.C. § 636(a)(36)(D). The maximum loan amount was generally the lesser of $10 million or 2.5 times the borrower's average total monthly payroll costs. 15 U.S.C. § 636(a)(36)(E). The size of a borrower's permissible loan therefore turned on the magnitude of its qualifying payroll costs.

21.     Under the PPP, eligible borrowers did not deal directly with the SBA. Instead, PPP loans were originated and funded by participating commercial banks and guaranteed by the SBA, and the lender served as the intermediary between the borrower and the SBA. The lender was responsible for collecting the required information and documentation from the borrower, calculating the loan amount, and submitting the application and supporting documentation to the SBA for approval and funding. When a borrower later sought forgiveness, the borrower submitted its forgiveness application and supporting documentation to the lender; the lender was required to review the application and issue a forgiveness decision to the SBA, generally within sixty days; and, if the lender approved forgiveness, it requested payment from the SBA, which was then required to remit the forgiven amount to the lender, generally within ninety days, subject to any

5

Electronically Filed - St Louis County - July 01, 2026 - 02:35 PM

SBA review of the loan. *See* U.S. Dep't of the Treasury, Paycheck Protection Program Information Sheet: Lenders; 85 Fed. Reg. 33,004, 33,005 (June 1, 2020); 85 Fed. Reg. 33,010 (June 1, 2020).

22.     Participating lenders were compensated by the SBA through processing fees calculated as a percentage of the loan amount: five percent for loans of not more than $350,000; three percent for loans of more than $350,000 and less than $2,000,000; and one percent for loans of at least $2,000,000. *See* 85 Fed. Reg. 20,811 (Apr. 15, 2020). The greater the loan amount, the greater the lender's processing fee.

23.     This fee-based incentive structure encouraged volume. Because lenders were paid a fee per loan processed, there was an incentive for lenders to process as many loans as possible, as quickly as possible. SBA allowed lenders to rely on certifications of the borrower to determine eligibility of the borrower, and to rely on specified documents provided by borrowers to determine qualifying loan amounts and eligibility for loan forgiveness. This process meant that lenders were not expected to independently verify most of what borrowers told them, which lowered the lenders' underwriting costs while still permitting them to collect processing fees. Moreover, lenders earned processing fees regardless of whether loans were later forgiven or had to be repaid.

24.     Because the SBA guaranteed PPP loans and reimbursed lenders for forgiven amounts, lenders had no financial downside if loans were forgiven. A lender's processing fee and origination fee were already collected, and approving a forgiveness application (rather than scrutinizing it) avoided extra underwriting work, delay, or the risk of provoking disputes with the borrower.

25.     The PPP was a novel program implemented under emergency conditions. SBA guidance concerning the program was issued, supplemented, and revised on a frequent—at times daily—basis throughout the program's early weeks. The SBA and the U.S. Department of the

6

Electronically Filed - St Louis County - July 01, 2026 - 02:35 PM

Treasury issued a rapid succession of Interim Final Rules and repeatedly updated Frequently Asked Questions in the program's opening weeks. *See, e.g.*, 85 Fed. Reg. 20,811 (Apr. 15, 2020) (first PPP Interim Final Rule); U.S. Dep't of the Treasury, Paycheck Protection Program: Frequently Asked Questions (updated periodically).

26. The treatment of independent contractors was a particular point of confusion in the program's early days. The CARES Act defined "payroll costs" broadly, *see* 15 U.S.C. § 636(a)(36)(A)(viii), sweeping in salaries, wages, commissions, tips, group health benefits, retirement contributions, and state and local payroll taxes paid on behalf of employees. Initially, lenders, including Regions, required applicants to document compensation paid to independent contractors, as well as employees. The SBA's first Interim Final Rule, however—issued on or about April 2, 2020 and published in the Federal Register on April 15, 2020—provided that independent contractors did *not* count as employees for purposes of calculating the eligible loan amount. *See* 85 Fed. Reg. 20,811, 20,813 (Apr. 15, 2020). The June 1, 2020 forgiveness rules likewise defined eligible "payroll costs" for forgiveness purposes to exclude payments to independent contractors.

27. But the Interim Final Rule was internally inconsistent and confusing. In one section, for example, the methodology for calculating the maximum loan amount was defined to include amounts paid to an independent contractor up to $100,000. Similarly, in another section, the definition of "payroll costs" included, "for an independent contractor or sole proprietor, wages, commissions, income, or net earnings from self-employment or similar compensation." Yet in still another section, the Rule indicated that independent contractors did *not* "count for purposes of a borrower's PPP loan calculation."

Electronically Filed - St Louis County - July 01, 2026 - 02:35 PM

## II.    DeLine Engages Regions to Pursue a PPP Loan

28.    Mr. DeLine was a longstanding client of Regions, with their relationship stretching back years. Regions served as the banker to many of his businesses, and Mr. DeLine deposited many hundreds of thousands, if not millions of dollars with the bank. Mr. DeLine and his companies also obtained loans and insurance from Regions. For example, Regions provided Mr. DeLine's businesses with financing for multiple trucks, and insurance facilities worth over $2 million. And Mr. DeLine relied on Regions for personal wealth management and financial advisory services.

29.    Over the course of that long-term relationship, Regions developed extensive familiarity with Mr. DeLine's businesses. Among other things, Regions was aware that Mr. DeLine's businesses, including in particular his trucking businesses, employed numerous independent contractors.

30.    When the PPP became available, Mr. DeLine naturally turned to Regions for assistance. As a result of his deep relationship with the bank, and the fast-moving and complex nature of the PPP process, Mr. DeLine relied on Regions to a greater degree than in an ordinary, arms-length borrower-lender relationship. As Regions and Mr. Stapleton well knew, Mr. DeLine placed his trust and confidence in the bank. And Regions embraced that trust, holding itself out as a resource to Mr. DeLine, and providing advice throughout the PPP application process. On virtually every email, Regions assured Mr. DeLine that it would "do what is right" and "put people first."

31.    On March 27, 2020, the controller for Mr. DeLine's businesses, Rose Grant, emailed Regions banker Max Mitts to ask whether he could handle PPP loan applications for multiple DeLine companies.

8

Electronically Filed - St Louis County - July 01, 2026 - 02:35 PM

32. In the days that followed, Regions personnel, including Mr. Mitts and Mr. Stapleton, provided Ms. Grant and Mr. DeLine with guidance and information about how to obtain a PPP loan, including application instructions and document checklists. Regions also reached out to Mr. DeLine and Ms. Grant about obtaining a PPP loan through its Private Wealth Management department.

### III. Regions Requires Independent Contractor Information for PPP Applications

33. Regions built independent contractor costs into the PPP application process from the first documents it sent Mr. DeLine and Ms. Grant.

34. On April 2, 2020, three Regions employees sent Ms. Grant a "PPP SBA Loan Application Required Document Check List": Max Mitts at 8:16 a.m., Mark Stapleton at 11:43 a.m., and Lisa Beck at 2:31 p.m. Item 6 on each checklist required the borrower to submit "[p]roof of payments for compensation to any sole proprietor or independent contractor for an amount not more than $100k in one year (pro-rated for covered period)." In other words, Regions instructed Mr. DeLine that independent contractor pay was *required* proof of eligible costs, alongside W-2 payroll.

35. On April 3, 2020, Regions provided Ms. Grant a second checklist that required a "1099 Summary" alongside W-2 summaries, payroll reports, and IRS Forms 940 and 941. Regions' automated application-confirmation email listed the "1099 Summary" among the supporting documents that were required before Regions could process PPP loans, and warned applicants that "[w]e may not be able to process your application" without it.

36. On or about April 3, 2020, Ms. Grant attempted to apply for PPP funding on behalf of Mr. DeLine's businesses using Regions' online portal. The portal required Ms. Grant to answer questions regarding the businesses' costs. From the information she supplied, including the independent contractor information Regions had specifically demanded, the portal ultimately

Electronically Filed - St Louis County - July 01, 2026 - 02:35 PM

generated Mr. DeLine's PPP application. The application listed 466 workers: 174 W-2 employees and 292 independent contractors. It requested $5,807,340.39.

37. On initially attempting to interact with the portal, however, Ms. Grant encountered technical difficulties. Regions' personnel likewise reported being "locked out" of the portal and advised Ms. Grant to "keep trying." As a result, it was unclear to Ms. Grant, or Mr. DeLine, whether the application had in fact been submitted.

38. Amidst that uncertainty, Mr. DeLine—concerned that the opportunity to secure a PPP loan might disappear if funds allocated by the government were exhausted before his Regions application could be processed—also explored obtaining PPP loans through a couple of local banks, including Providence Bank. On April 3, Ms. Grant submitted three PPP loan applications to Providence Bank on behalf of three of Mr. DeLine's businesses: Amega Sales, Inc.; Midwest Mortgage Associates Corporation; and GKD Management, L.P.

39. In contrast to Regions—which required 1099 information for independent contractors—representatives of Providence Bank and another bank advised Ms. Grant that under revised program rules, payroll costs for independent contractors could *not* be used to calculate eligible loan amounts.

40. Consistent with the instructions Providence provided, the loan applications Ms. Grant prepared for Providence did *not* include the payroll costs of independent contractors employed by Mr. DeLine's companies. Accordingly, the loan amounts for Amega Sales, Midwest Mortgage Associates and GKD Management sought through Providence totaled only approximately $1.4 million, substantially less than the loan Mr. DeLine sought through Regions, which permitted the inclusion of independent contractor costs at the time of the initial application.

Electronically Filed - St Louis County - July 01, 2026 - 02:35 PM

**IV.    Regions Belatedly Concludes That Independent Contractor Costs Are Ineligible But Submits the Application Anyway**

41.    Three days later, on or about April 6, 2020, Regions sent Mr. DeLine an automated confirmation that his PPP application was complete and provided a loan application identification number. But on April 11, 2020, Mr. Stapleton requested additional information: a federal employment tax return, IRS Form 940, for each applicant entity. Ms. Grant promptly complied with the request.

42.    On April 12, 2020, Mr. Stapleton emailed Ms. Grant with new information. Now, he suggested, for the first time, that, contrary to Regions' earlier instruction and advice, payroll costs for independent contractors were in fact *not* eligible under the PPP program. He wrote: "It looks like you included 1099 employee wages in your calculation. Is that correct? At the time you applied that was the correct way to submit. Late last week, the SBA finally officially provided guidance on 1099 employees. Those employees cannot be included in your PPP loan amount. If those employees have been impacted they need to apply for themselves." In that same email, Mr. Stapleton noted that the applicable guidance was changing daily.

43.    Mr. Stapleton's statement that the SBA had provided guidance on 1099 employees only "[l]ate last week" was false. In fact, the controlling SBA Interim Final Rule had been issued on or about April 2, 2020—*before* Ms. Grant submitted the PPP application to Regions. Notwithstanding that rule, Regions incorrectly advised Mr. DeLine and Ms. Grant to include independent contractors repeatedly and consistently from late March until April 12—and even told them that the application would not be considered without that information.

44.    Moreover, even after suggesting that independent contractor costs were not covered, Mr. Stapleton encouraged Mr. DeLine—in the face of the PPP program's ever-evolving rules—to submit the original PPP loan application *without changes* to the loan amount or the

11

Electronically Filed - St Louis County - July 01, 2026 - 02:35 PM

number of employees, and to seek the full loan amount of $5.8 million, which had been calculated in part based upon independent contractor costs, and before Mr. DeLine had obtained approximately $1.4 million in PPP funding through Providence Bank.

45.     On April 15, 2020, Mr. Stapleton informed Ms. Grant that Regions had "received an SBA authorization on [the] original loan request of $5.8MM," that loan documents would be emailed, and that funding would follow once the documents were returned.

46.     On April 17, 2020, Mr. DeLine and Mr. Stapleton spoke by telephone. During that call, Mr. DeLine told Mr. Stapleton that he had obtained a loan from Providence Bank for Mr. DeLine's W-2 employees. Mr. Stapleton told Mr. DeLine to proceed with the application as previously submitted without amending the loan amount, and to simply pay back any amounts that were not ultimately forgiven. Mr. Stapleton explained that the delay caused by modifying the loan would jeopardize Mr. DeLine's access to funding in the event that PPP funds ran out. Mr. DeLine asked Mr. Stapleton to confirm the conversation in writing.

47.     At 12:38 p.m. that same day, Mr. Stapleton emailed Mr. DeLine as follows: "While we can adjust the loan amount, given the volume of loan applications and documentation that our group is working on, I would just error [sic] on paying back any amount that is not forgiven. The risk of amending the loan amount at this point is going back into the documentation que [sic] which I cannot provide an estimate of how long that will take. You may also have to amend your Borrower's application which could further complicate matters." At the time he sent this email, Mr. Stapleton knew that the loan amount reflected payroll costs for independent contractors and that Mr. DeLine had obtained a PPP loan from another bank to cover his W-2 employees.

48.     Less than two hours after Mr. Stapleton's email, Regions transmitted DocuSign loan documents to Mr. DeLine for execution. Mr. DeLine, relying on Mr. Stapleton's expertise

Electronically Filed - St Louis County - July 01, 2026 - 02:35 PM

and guidance, signed the loan application. The final PPP Borrower Application requested $5,807,300 based on an average monthly payroll of $2,322,936.20 for 466 workers, consisting of 174 W-2 employees and 292 independent contractors. Regions, in turn, submitted the application to the SBA. The final PPP Borrower Application also listed Mr. DeLine's companies, alongside each company's Tax Identification Number ("TIN").

49.     Regions specifically required, and Ms. Grant provided, documentation of 1099 compensation as part of the application. And Mr. DeLine and Mr. Stapleton specifically discussed the fact that the loan amount reflected payroll expenses for independent contractors. Yet Mr. Stapleton instructed Mr. DeLine, both verbally and in writing, to proceed with the application anyway.

50.     On the application, Mr. DeLine truthfully certified, among other things, that "[t]he Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC." He also truthfully certified that "the funds will be used to retain workers…"

## V.    DeLine's Effort to Return Excess Funds

51.     As described above, the three Providence loans Mr. DeLine had obtained to cover his W-2 employee payroll were funded for Amega Sales, Inc. ($239,500); GKD Management, L.P. ($454,400); and Midwest Mortgage Associates Corporation ($783,600).

52.     Mr. Stapleton was aware of these loans, as he and Mr. DeLine had specifically discussed those loans in their April 17 phone call. Mr. Stapleton also knew that the Regions loan amount was premised, in part, on the W-2 payroll costs for those same entities (in addition to the payroll costs for independent contractors).

53.     On July 27, 2020, after receiving the Regions loan, Ms. Grant emailed Mr. Stapleton and other Regions personnel to inquire about how to return approximately $1.2 million

13

Electronically Filed - St Louis County - July 01, 2026 - 02:35 PM

in excess loan proceeds that were based on W-2 payroll costs. She wrote: "Greg and I have identified $1,191,161.81 in excess funds received under his name. We would like to return this amount promptly. How do we do that? Do we just instruct you to apply funds to that loan? Obviously, Greg wants to do the right thing and return this in case it is needed by others."

54.     Chenoa Hughes, Regions' Commercial Credit Assistant, replied on August 3, 2020 that she needed to "put in a request through the system" and that the linked account "does not have sufficient funds." She told Ms. Grant to wait for Mr. Stapleton to call.

55.     On August 6, 2020, ten days after Ms. Grant had formally requested assistance returning the excess funds, Mr. Stapleton emailed Grant: "You or Greg should have received an e-mail last night notifying you that the PPP Loan Forgiveness portal is open and you are eligible to process your forgiveness application. The portal contains a lot of resources and information to guide you through the process. Please let me know if you have any questions as you begin the process. Also, did you still want to pay down a portion of the PPP loan? If so, we just need to confirm the account that we will debit and the amount."

56.     Ultimately, in lieu of refunding the excess loan proceeds, Ms. Grant deducted the full amount of the Providence loans—approximately $1.4 million—from the eligible payroll costs she reported on Mr. DeLine's forgiveness application for the Regions PPP loan.

57.     To assist borrowers in preparing the forgiveness application, Regions provided them with a worksheet entitled "SBA Paycheck Protection Program Loan Forgiveness Application Schedule A Workbook." The instructions accompanying the workbook indicated that it was "to be used to aid in the calculation of values for entry into Regions Bank's online PPP Forgiveness Application." The workbook prompted borrowers to enter amounts paid to "any independent contractors, owner-employees, self-employed individuals, or partners"—and instructed applicants

14

Electronically Filed - St Louis County - July 01, 2026 - 02:35 PM

to "complete this information for each independent contractor, owner-employee, self-employed individual or partner." The workbook also prompted borrowers to include amounts for any PPP loans obtained from other banks.

58.     Ms. Grant used the template to create a spreadsheet to document the requested information for the forgiveness application for the Regions loan. That spreadsheet contained a line item for the Providence loans and deducted those loans when calculating forgivable payroll costs. In addition, the spreadsheet included a line item for payroll costs attributable to independent contractors and categorized those costs by each of Mr. DeLine's companies. The final worksheet, after deducting the amount of the Providence loans, reflected total forgivable payroll costs of $4,890,903.08—comprising, among other things, of W-2 salaries and payments to independent contractors. This amount matched to the penny the amount on the forgiveness application Ms. Grant submitted to Regions.

59.     Despite the fact that Ms. Grant specifically deducted the amount of the Providence PPP loans, Regions nonetheless recommended forgiveness of the full amount of the Regions PPP loan, apparently after taking into account other eligible non-payroll costs that more than offset the deducted Providence amount. As a result, although Ms. Grant had informed Regions, on Mr. DeLine's behalf, that he had used the PPP loan to pay independent contractors (as the bank already knew), and had deducted the Providence proceeds, Regions concluded that the entire Regions loan was forgivable and submitted a request for forgiveness of the entire amount to the SBA.

60.     On July 1, 2021, after the forgiveness application had been submitted through the Regions online portal, Ms. Grant emailed Mr. Stapleton that "it appears to us that we qualify for 100% forgivable," and asked him to "verify for us as soon as possible."

15

Electronically Filed - St Louis County - July 01, 2026 - 02:35 PM

61.     Neither Mr. Stapleton nor anyone else at Regions responded to Ms. Grant's request to verify that the forgiveness application was correct. Instead, Regions went ahead and submitted the application to the SBA, knowing that it reflected payroll costs for independent contractors and amounts overlapping with the Providence loans. On August 3, 2021, the bank sent Ms. Grant an automated email that read: "Regions has successfully submitted your Paycheck Protection Program (PPP) loan Forgiveness Application to the SBA. The SBA has confirmed receipt and will begin its review and approval process."

62.     One week later, the SBA flagged the loan for additional review. On August 10, 2021, Mr. Stapleton forwarded Mr. DeLine an SBA notice stating that the SBA was "currently reviewing" his loan and required additional information. The SBA requested documentation on PPP loan amount eligibility, payroll and tax support for the loan, salary and wage reduction compliance, employee retention and FTE compliance, and COVID operational-impact safe harbor documentation. The SBA also requested a detailed breakdown of how Mr. DeLine's original loan amount had been calculated.

63.     In response, on August 19, 2021, Ms. Grant emailed Regions 68 supporting documents, which had been submitted through the Regions' PPP forgiveness portal, across eight separate emails, copying Mr. Stapleton. The submission included 2019 and 2020 Forms 1096, 1099-MISC, and 1099-NEC for Amega Sales, GKD, and MMAC, along with 1099 listings for Transco. Those federal tax filings confirmed what Ms. Grant had already told Regions: that the loan reflected, in substantial part, payments to independent contractors.

64.     Even then, neither Mr. Stapleton nor anyone else at Regions suggested that there were any issues with the forgiveness application, raised concerns about the inclusion of the

16

Electronically Filed - St Louis County - July 01, 2026 - 02:35 PM

independent contractor costs or the overlapping Providence amounts, or advised Mr. DeLine that the submission was in any way improper.

65.    On or about August 20, 2021, the SBA forgave the Regions PPP loan in full. The SBA did so despite the fact that the applications submitted by Mr. DeLine for both the Regions loan and the Providence loans listed the same recipient companies, including their TIN numbers.

## VI.    The False Claims Act Action and the Government Investigation

66.    As a direct and foreseeable result of Regions' misstatements to Mr. DeLine and his employees, Mr. DeLine has been named as a defendant in a *qui tam* action under the False Claims Act arising from the PPP loans, captioned *United States ex rel. Smith v. DeLine*, No. 2:20-cv-04226-MDH (W.D. Mo.) (the "FCA Action").

67.    The operative complaint in the FCA Action alleges, among other things, that Mr. DeLine improperly included independent contractor costs in the Regions PPP application and that doing so constituted an actionable false claim. That conduct was a direct result of Mr. Stapleton's instruction to Mr. DeLine to (i) submit the loan application as it had been drafted before Regions informed Mr. DeLine that the SBA modified its guidance concerning independent contractors and (ii) to "error [sic] on paying back any amount that is not forgiven." At the time that Mr. Stapleton provided those instructions to Mr. DeLine, he and Regions knew, or were reckless in not knowing, that the SBA's guidance prohibited independent contractor costs from being included in calculating eligible payroll costs.

68.    In the wake of the FCA Action, the Department of Justice initiated an investigation into the PPP loans Mr. DeLine obtained from Regions. On October 7, 2025, the United States formally intervened in the FCA Action. The government has demanded that Mr. DeLine repay the full amount of the Regions PPP loan plus a penalty, or face the possibility of treble damages under the FCA. Such a result would be financially ruinous to Mr. DeLine.

17

Electronically Filed - St Louis County - July 01, 2026 - 02:35 PM

**VII.   Regions Settles With the United States While Leaving DeLine Exposed**

69.     On May 21, 2026, Regions Financial Corporation and Regions Bank entered into a Settlement Agreement with the United States, acting through the Department of Justice and on behalf of the SBA, in connection with Regions' conduct in approving "in full the forgiveness of [Mr. DeLine's] PPP loan on or about August 3, 2021, despite the fact that the PPP loan was not eligible for forgiveness" (the "Covered Conduct").

70.     As part of that settlement, Regions agreed to pay to the United States $4,919,631.44, plus interest at 4% per annum from March 10, 2026.

71.     In exchange, the United States agreed to release Regions, together with its current and former parent corporations, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them, from any civil or administrative monetary claim arising under the Covered Conduct under the common law theory of unjust enrichment.

72.     Regions also agreed to cooperate "fully and truthfully" with the government's investigation of individuals and entities not released by the Settlement Agreement and arising out of the Covered Conduct.

**VIII.  Reliance, Resulting Harm, and Reputational and Business Injury**

73.     At each relevant juncture in seeking the Regions PPP loan, Mr. DeLine relied on representations by Mr. Stapleton and other Regions employees, and guidance they provided, concerning how to handle the PPP loan application and the subsequent forgiveness application.

74.     The trust and reliance Mr. DeLine placed in Regions and Mr. Stapleton was reasonable in light of Mr. DeLine's longstanding and far-reaching relationship with the bank; its status as an approved PPP lender processing a large volume of PPP loan applications; its explicit

Electronically Filed - St Louis County - July 01, 2026 - 02:35 PM

assumption of an advisory role with respect to the application; and the novel and rapidly changing nature of the PPP.

75. Regions profited substantially from its misrepresentations to Mr. DeLine. On information and belief, Regions received a lender processing fee of one percent of the loan proceeds—approximately $58,073—based on the size of the loan. *See* 85 Fed. Reg. 20,811 (Apr. 15, 2020). Had Mr. DeLine revised the loan application to deduct the cost of independent contractors, or to reflect the Providence PPP loans, or had he not proceeded with the loan at all, Regions would have received a lesser fee, or no fee. Mr. DeLine did *not* revise the loan application, however, because Mr. Stapleton told him not to do so.

76. Mr. DeLine's damages are the direct and foreseeable result of Regions' conduct. Regions controlled every step of the submission to the SBA: it required Mr. DeLine's 1099 documentation, generated the application through its own portal, told Mr. DeLine that including contractors was correct, told him not to amend the application when it informed him that the inclusion of independent contractors was incorrect, steered him away from repayment and toward forgiveness, built the forgiveness workbook that directed his team to enter contractor compensation, and generated, approved and submitted the application for full forgiveness. Mr. DeLine had no direct contact with the SBA.

77. As a direct and proximate result of Regions' actions and Mr. DeLine's reliance on the guidance he received, Mr. DeLine has suffered and continues to suffer pecuniary harm, including not simply the prospect of repaying the PPP loan, but also substantial attorneys' fees and costs incurred in defending the FCA Action and responding to Civil Investigative Demands issued by the Department of Justice as part of its investigation. Mr. DeLine has also suffered consequential damages, including an inability to obtain critical financing for his business. For

Electronically Filed - St Louis County - July 01, 2026 - 02:35 PM

example, in February 2026, a major factoring company declined to underwrite a loan to one of Mr. DeLine's businesses despite his pristine credit, due specifically to the ongoing FCA Action. The factor's refusal to fund that loan deprived Mr. DeLine of significant financing that would have allowed him to sustain and grow his business.

## CLAIMS FOR RELIEF

### COUNT I — NEGLIGENT MISREPRESENTATION

78. Plaintiffs repeat and re-allege each of the foregoing paragraphs as if fully set forth herein.

79. In the course of its business as an approved PPP lender, Regions, acting through Mr. Stapleton and other personnel, instructed and guided Mr. DeLine in applying for and obtaining PPP funding. As an example, Mr. Stapleton specifically told Mr. DeLine to submit a PPP loan application that reflected independent-contractor payroll costs, and to proceed with the application despite the fact that he had already received PPP loans from another bank to cover the payroll costs of his W-2 employees. Mr. Stapleton instructed Mr. DeLine not to amend the application because doing so would potentially jeopardize his ability to obtain funding, and instead told him to simply pay back any loan amounts that were not ultimately forgiven.

80. Regions' negligent misrepresentations included its statements as to the inclusion of independent contractors, Mr. Stapleton's instructions to apply for the loan without amending the application and to simply repay any amounts that were not forgiven, and Regions' determination that the loan was fully eligible for forgiveness.

81. Regions and its employees owed Mr. DeLine and his businesses a duty to exercise reasonable care and competence when providing information in the course of their business.

82. Additionally, Regions and its employees owed Mr. DeLine and his business a duty to speak owing to Regions' superior knowledge and information as to the PPP loan program and

20

Electronically Filed - St Louis County - July 01, 2026 - 02:35 PM

forgiveness process. Regions' superior knowledge and information about the PPP loan forgiveness process was not within the fair and reasonable reach of Mr. DeLine or his agents.

83.     Neither Regions nor Mr. Stapleton exercised reasonable care or competence in obtaining or communicating information, and misrepresented the proper procedure for securing PPP funding and forgiveness. Mr. Stapleton's instruction to Mr. DeLine and Ms. Grant to submit a PPP application without alterations, knowing that it reflected independent contractor costs and knowing that Mr. DeLine had already obtained some PPP funding through Providence, was a breach of Regions' and Mr. Stapleton's duty of reasonable care and competence.

84.     Regions and its employees likewise failed to exercise reasonable care or competence during the PPP loan forgiveness process by misrepresenting the loan's eligibility for full forgiveness.

85.     Regions intentionally provided the information for the guidance of a limited group of persons—Mr. DeLine and his agent, Ms. Grant—in a particular business transaction, namely Mr. DeLine's application for and pursuit of PPP funding and forgiveness through Regions.

86.     Mr. DeLine justifiably relied on the information Regions supplied.

87.     As a direct and proximate result of his reliance on Regions' negligent misrepresentations, Mr. DeLine has suffered concrete pecuniary loss, including but not limited to substantial attorneys' fees and costs and reputational and business harm.

## COUNT II — CONSTRUCTIVE FRAUD

88.     Plaintiffs repeat and re-allege each of the foregoing paragraphs as if fully set forth herein.

89.     The SBA delegated authority to Regions in connection with the approval of PPP loans applications and forgiveness applications. As part of that delegated authority, Regions obtained information from the SBA about eligibility requirements and the calculation of eligible

21

Electronically Filed - St Louis County - July 01, 2026 - 02:35 PM

loan amounts. Like other lenders that participated in the PPP program, Regions possessed superior knowledge about the PPP program, including its requirements and processes, and the rapidly evolving rules and regulations promulgated by the SBA.

90.     Based on this superior knowledge, Regions was able to instill special confidence and trust in borrowers like Mr. DeLine and his companies that were applying for PPP loans, and to influence such borrowers during the application and forgiveness process. Mr. DeLine's confidence and trust were bolstered by the longstanding and multi-faceted relationship Mr. DeLine and his companies shared with Regions.

91.     Moreover, borrowers could not interact directly with the SBA, and had to rely on Regions and other participating lenders to obtain PPP loans and forgiveness of those loans.

92.     Based on these facts, Regions owed Mr. DeLine and his businesses a fiduciary duty.

93.     Regions breached its fiduciary duty by, among other things, (i) directing Mr. DeLine and his employees to submit information relating to independent contractors in connection with the PPP application; (ii) instructing Mr. DeLine to submit the application without amending the loan amount; (iii) directing him to wait and see what the SBA did at the time of forgiveness; (iv) approving the full amount of the loan for forgiveness despite knowing that it reflected payments to independent contractors and duplicate loan proceeds; and (v) recommending that SBA forgive the loan in its entirety.

94.     Mr. DeLine relied on Regions to his detriment and, as a direct and proximate result of Regions' breach, has suffered harm, including, but not limited to, substantial attorneys' fees and costs and reputational and business harm.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants and award the following relief:

22

Electronically Filed - St Louis County - July 01, 2026 - 02:35 PM

(a)    Compensatory and actual damages in an amount to be proven at trial;

(b)    Damages for the attorneys' fees and costs that Plaintiffs have incurred and continue to incur in responding to the Civil Investigative Demand and defending the FCA Action;

(c)    Damages for the reputational, business harm and lost business opportunities that Plaintiffs have suffered as a result of Regions' conduct;

(d)    Pre-judgment and post-judgment interest as allowed by law;

(e)    Plaintiffs' costs of suit; and

(f)    Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Date: July 1, 2026

*/s/ Thomas M. Harrison*
Thomas M. Harrison (Mo. Bar No. 36617)
Van Matre Law Firm
1103 E Broadway, Columbia, MO 65201
Tel:  (573) 874-7777
tom@vanmatre.com

Manisha M. Sheth (*Pro hac vice application forthcoming*)
Stephen E. Frank (*Pro hac vice application forthcoming*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 5th Avenue
New York, NY 10016
Tel:  (212) 849-7000
manishasheth@quinnemanuel.com
stephenfrank@quinnemanuel.com

*Attorneys for Plaintiffs*

Electronically Filed - ST LOUIS COUNTY - July 08, 2026 - 11:07 AM

# Van Matre Law Firm, P.C.

Garrett S. Taylor
Casey E. Elliott
Richard B. Hicks
Karen E. Hajicek
Brian R. Hajicek
Anne E. Kern

1103 East Broadway
P.O. Box 1017
Columbia, MO 65201
Phone: (573) 874-7777
Fax:  (573) 875-0017
*www.vanmatre.com*

Thomas M. Harrison
Robert N. Hollis

———————

Craig A. Van Matre
(*Retired*)
Everett S. Van Matre
(1922-1998)

July 8, 2026

St. Louis County Circuit Clerk
105 South Central Avenue
Clayton, MO 63105
**Via eFile**

> Re:    Gregory A. DeLine, et al, v. Regions Bank, Inc.
>        St. Louis County Case No. 26SL-CC04730

Ladies and Gentlemen:

I am writing to request that a summons be issued for the Defendant in this case:

> Regions Bank
> Serve: CSC-Lawyers Incorporating Service Company, Registered Agent
> 221 Bolivar Street
> Jefferson City, MO 65101

Once the summons is issued we will print it along with a service copy of the petition.  Will then arrange to deliver it to the Cole County Sheriff, Civil Process Division, for service along with the appropriate service fee.

Thank you for your attention to this.

> Sincerely,
> **VAN MATRE LAW FIRM, P.C.**
>
> By:      */s/ Thomas M. Harrison*
>          tom@vanmatre.com

TMH/ach



# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>HEATHER RENE CUNNINGHAM | Case Number:  26SL-CC04730 | |
|---|---|---|
| Plaintiff/Petitioner:<br>GREGORY A DELINE<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>THOMAS M. HARRISON<br>1103 E BROADWAY  101<br>P O  BOX 1017<br>COLUMBIA, MO  65205-1017 | |
| Defendant/Respondent:<br> REGIONS BANK INC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 | (Date File<br>Stamp for<br>Return) |
| Nature of Suit:<br>CC Other Tort | | |

**The State of Missouri to:**   **REGIONS FINANCIAL CORPORATION**
**Alias:**
**C/O CSC-LAWYERS INCORP SERV CO**
**221 BOLIVAR ST**
**JEFFERSON CITY, MO  65101**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

*COURT SEAL OF*



*ST. LOUIS COUNTY*

| 08-JUL-2026 | /S/ Adam Dockery |
|---|---|
| Date | Clerk |

**Further Information:**
AD

**Case Number: 26SL-CC04730**

## Officer's or Server's Return

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

_____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date)
at _____ (time).

_____     _____
Printed Name of Officer or Server                   Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on _____ (date).

*(Seal)*        My commission expires: _____ _____
                                                            Date                       Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

**THE CIRCUIT COURT OF ST.  LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

## Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case.   However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.  A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.  Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

## Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.   These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.  Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

## Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits.  Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.  The services are provided by individuals and organizations who may charge a fee for this help.  Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.  The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

CCADM73

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement.  An effective mediator may offer solutions that have not been considered by the parties or their lawyers.  A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms.  You should ask your lawyer for further information.

CCADM73



**OFFICE OF THE CIRCUIT CLERK**

Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.



# Summons in Civil Case

## IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>HEATHER RENE CUNNINGHAM | **Case Number:  26SL-CC04730** |
| Plaintiff/Petitioner:<br>GREGORY A DELINE | Plaintiff's/Petitioner's Attorney/Address<br>THOMAS M. HARRISON<br>1103 E BROADWAY  101<br>P O  BOX 1017 |
| vs. | COLUMBIA, MO  65205-1017 |
| Defendant/Respondent:<br> REGIONS BANK INC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING |
| Nature of Suit:<br>CC Other Tort | 105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |

(Date File Stamp for Return)

**The State of Missouri to:**   **REGIONS BANK INC**
 **Alias:**
 **CSC-LAWYERS INC SVC CO**
 **221 BOLIVAR ST**
 **JEFFERSON CITY, MO  65101**
   **Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

*COURT SEAL OF*



*ST. LOUIS COUNTY*

| | |
|---|---|
| 08-JUL-2026 | /S/ Adam Dockery |
| Date | Clerk |

**Further Information:**
AD

**Case Number: 26SL-CC04730**

## Officer's or Server's Return

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

_____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date)
at _____ (time).

_____          _____
Printed Name of Officer or Server                   Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on _____ (date).

*(Seal)*          My commission expires: _____ _____
                                                          Date                    Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

### THE CIRCUIT COURT OF ST.  LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

### NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case.   However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.  A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.  Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations in Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.   These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.  Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits.  Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.  The services are provided by individuals and organizations who may charge a fee for this help.  Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.  The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

CCADM73

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement.  An effective mediator may offer solutions that have not been considered by the parties or their lawyers.  A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms.  You should ask your lawyer for further information.

CCADM73



**OFFICE OF THE CIRCUIT CLERK**

Missouri's 21st Judicial Circuit, St. Louis County

Civil Department

105 South Central Avenue, Clayton, MO 63105

Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.

Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.



# Summons in Civil Case

## IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

RETURN COPY
FILED

JUL 16 2026
JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

| Judge or Division:<br>HEATHER RENE CUNNINGHAM | Case Number: 26SL-CC04730 | |
|---|---|---|
| Plaintiff/Petitioner:<br>GREGORY A DELINE<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>THOMAS M. HARRISON<br>1103 E BROADWAY 101<br>P O BOX 1017<br>COLUMBIA, MO 65205-1017 | RECEIVED<br>JUL 09 2026<br>COLE COUNTY<br>SHERIFF'S OFFICE |
| Defendant/Respondent:<br>REGIONS BANK INC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | |
| Nature of Suit:<br>CC Other Tort | | (Date File<br>Stamp for<br>Return) |

The State of Missouri to:   **REGIONS BANK INC**
**Alias:**
**CSC-LAWYERS INC SVC CO**
**221 BOLIVAR ST**
**JEFFERSON CITY, MO 65101**

Other Addresses:

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

### COURT SEAL OF



### ST. LOUIS COUNTY

| 08-JUL-2026 | /S/ Adam Dockery |
|---|---|
| Date | Clerk |

**Further Information:**
AD

3429 $50.0

Case Number: 26SL-CC04730

## Officer's or Server's Return

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

[ ] delivering a copy of the summons and petition to the defendant/respondent.

[ ] leaving a copy of the summons and petition at the dwelling house or usual place of abode of the

defendant/respondent with _____, a person at least 18 years

of age residing therein.

[✓] (for service on a corporation) delivering a copy of the summons and petition to:

_CSC Lawyers, S.Lewis_ (name) _designee_ (title).

[ ] other: _____.

Served at _350 E. High St._ (address)

in _Cole_ (County/City of St. Louis), MO, on _7-10-26_ (date)

at _800Am_ (time).

_Sheriff John P Wheeler_ by _Sgt Cenee Wray_

Printed Name of Officer or Server          Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____    _____

                                          Date                Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

Electronically Filed - ST LOUIS COUNTY - July 20, 2026 - 02:24 PM



## CLERK OF THE SUPREME COURT
### STATE OF MISSOURI
### POST OFFICE BOX 150
### JEFFERSON CITY, MISSOURI
### 65102

BETSY LEDGERWOOD
CLERK

TELEPHONE
(573) 751-4144

7/17/2026

*This will hereby acknowledge receipt of $820.00 as required by Rule 6.01(n) for Stephen Frank and Manisha Sheth, appearing in Gregory A. Deline et al., v. Regions Bank, Inc., Case No. 26SL-CC04730, before the Circuit Court, Saint Louis County, State of Missouri.*

Betsy Ledgerwood, Clerk

Electronically Filed - ST LOUIS COUNTY - July 20, 2026 - 02:24 PM

**IN THE CIRCUIT COURT OF
ST. LOUIS COUNTY, MISSOURI**

| | |
|---|---|
| Gregory A. DeLine, Amega Sales, Inc., ) | |
| GKD Management L.P. d/b/a ) | |
| A&G Commercial Trucking, ) | |
| Midwest Mortgage Associates Corporation, ) | |
| d/b/a Total Lending Concepts, Inc. ) | |
| Amega Personnel Services Inc., ) | |
| Transco Express Corp., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 26SL-CC04730 |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| Regions Bank Inc., ) | |
| ) | |
| Defendant. ) | |

**MOTION FOR *PRO HAC VICE* ADMISSION OF STEPHEN E. FRANK**

Pursuant to Rule 9.03 of the Missouri Supreme Court Rules, the undersigned respectfully moves this Court to permit Stephen E. Frank to practice specially in this Court in this case as attorney of record for Plaintiffs for Gregory A. DeLine, Amega Sales, Inc., GKD Management L.P. d/b/a A&G Commercial Trucking, Midwest Mortgage Associates Corporation d/b/a Total Lending Concepts, Inc., Amega Personnel Services Inc., and Transco Express Corp., and to participate in the trial, proceedings and hearings herein. In support of this Motion, movant states:

1.     Stephen E. Frank is an attorney licensed to practice law and a member of the firm Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), in the office at 111 Huntington Avenue, Suite 520, Boston, MA 02199.

2.     Stephen E. Frank and the law firm of Quinn Emanuel have been retained by Plaintiffs to act as counsel in this matter. Stephen E. Frank desires to be permitted to practice specially in this Court as counsel for Plaintiffs in the above-styled action.

Electronically Filed - ST LOUIS COUNTY - July 20, 2026 - 02:24 PM

3.      Stephen E. Frank has been admitted to practice law in the Commonwealth of Massachusetts since 2014 (568455). Stephen E. Frank has been admitted to practice law in the State of New York since 2005 (4312138). Stephen E. Frank has also been admitted to practice law before the United States District Court for the District of Massachusetts, the United States Court of Appeals for the First Circuit, and the United States Court of Appeals for the Second Circuit. Stephen E. Frank is currently licensed and in good standing to practice law in each jurisdiction to which he is admitted.

4.      Neither Stephen E. Frank nor any member of the firm of Quinn Emanuel, is under suspension or disbarment by any Court to which Stephen E. Frank is admitted.

5.      Stephen E. Frank is familiar with the Missouri Supreme Court Rules and will at all times abide by and comply with those rules as counsel herein.

6.      Thomas M. Harrison of the Van Matre Law Firm, P.C., located at 1103 E Broadway, Columbia, MO 65201, has agreed to act as counsel herein for Plaintiffs and to sponsor the motion for the *pro hac vice* admission of Stephen E. Frank.

7.      Proof that Mr. Frank has paid the fee required by Supreme Court Rule 6.01(n) is attached to this motion.

Electronically Filed - ST LOUIS COUNTY - July 20, 2026 - 02:24 PM

Wherefore, Thomas M. Harrison respectfully requests that this Court permit Stephen E. Frank to practice specially in this case as attorney of record for Plaintiffs and to participate in the trial, proceedings and hearings herein.  A proposed order is attached hereto.

Date: July 20, 2026

*Thomas M. Harrison*
Thomas M. Harrison (Mo. Bar No. 36617)
Van Matre Law Firm
1103 E Broadway, Columbia, MO 65201
Tel:  (573) 874-7777
tom@vanmatre.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2026, the foregoing was electronically filed with the Clerk of the Court for St. Louis County, Missouri using Missouri Case.Net which sent notification of such filing to all persons listed in the Court's electronic notification system. I further certify that on July 20, 2026, the foregoing was served via regular mail on the Defendant in this case at the following address: Regions Bank, Inc. c/o CSC-Lawyers Incorporating Service Company, Registered Agent, 221 Bolivar Street, Jefferson City, MO 65101.

*Thomas M. Harrison*
Thomas M. Harrison

Electronically Filed - ST LOUIS COUNTY - July 20, 2026 - 02:24 PM

**IN THE CIRCUIT COURT OF
ST. LOUIS COUNTY, MISSOURI**

| | |
|---|---|
| Gregory A. DeLine, Amega Sales, Inc.,<br>GKD Management L.P. d/b/a<br>A&G Commercial Trucking,<br>Midwest Mortgage Associates Corporation,<br>d/b/a Total Lending Concepts, Inc.<br>Amega Personnel Services Inc.,<br>Transco Express Corp.,<br><br>   Plaintiffs,<br><br>v.<br><br>Regions Bank Inc.,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 26SL-CC04730<br>)<br>) JURY TRIAL DEMANDED<br>)<br>)<br>)<br>) |

**<u>ORDER</u>**

Having reviewed Plaintiffs' Motion for <u>Pro Hac Vice</u> admission of Stephen E. Frank, the Court finds that the motion complies with Rule 9.03 of the Missouri Supreme Court Rules. Accordingly, the Court sustains the motion and orders that Stephen E. Frank be admitted <u>pro hac vice</u> in this cause.

Dated July ___, 2026

              _____
              Heather Rene Cunningham, Circuit Judge, Division 3

Electronically Filed - ST LOUIS COUNTY - July 20, 2026 - 02:24 PM



**CLERK OF THE SUPREME COURT**
STATE OF MISSOURI
POST OFFICE BOX 150
JEFFERSON CITY, MISSOURI
65102

BETSY LEDGERWOOD
CLERK

TELEPHONE
(573) 751-4144

7/17/2026

*This will hereby acknowledge receipt of $820.00 as required by Rule 6.01(n) for Stephen Frank and Manisha Sheth, appearing in Gregory A. Deline et al., v. Regions Bank, Inc., Case No. 26SL-CC04730, before the Circuit Court, Saint Louis County, State of Missouri.*

*Betsy Ledgerwood*

Betsy Ledgerwood, Clerk

Electronically Filed - ST LOUIS COUNTY - July 20, 2026 - 02:24 PM

**IN THE CIRCUIT COURT OF**
**ST. LOUIS COUNTY, MISSOURI**

| | |
|---|---|
| Gregory A. DeLine, Amega Sales, Inc., <br> GKD Management L.P. d/b/a <br> A&G Commercial Trucking, <br> Midwest Mortgage Associates Corporation, <br> d/b/a Total Lending Concepts, Inc. <br> Amega Personnel Services Inc., <br> Transco Express Corp., <br><br>    Plaintiffs, <br><br> v. <br><br> Regions Bank Inc., <br><br>    Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   Case No. 26SL-CC04730 <br> ) <br> )   JURY TRIAL DEMANDED <br> ) <br> ) <br> ) <br> ) |

**MOTION FOR *PRO HAC VICE* ADMISSION OF MANISHA M. SHETH**

Pursuant to Rule 9.03 of the Missouri Supreme Court Rules, the undersigned respectfully moves this Court to permit Manisha M. Sheth to practice specially in this Court in this case as attorney of record for Plaintiffs for Gregory A. DeLine, Amega Sales, Inc., GKD Management L.P. d/b/a A&G Commercial Trucking, Midwest Mortgage Associates Corporation d/b/a Total Lending Concepts, Inc., Amega Personnel Services Inc., and Transco Express Corp., and to participate in the trial, proceedings and hearings herein. In support of this Motion, movant states:

1.   Manisha M. Sheth is an attorney licensed to practice law and a member of the firm Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), in the office at 295 5th Ave, New York, NY 10016.

2.   Manisha M. Sheth and the law firm of Quinn Emanuel have been retained by Plaintiffs to act as counsel in this matter. Ms. Sheth desires to be permitted to practice specially in this Court as counsel for Plaintiffs in the above-styled action.

1

Electronically Filed - ST LOUIS COUNTY - July 20, 2026 - 02:24 PM

3.    Manisha M. Sheth has been admitted to practice law in New York State since 1999 (NY Bar No. 2990661).  Ms. Sheth is licensed to practice in New York State Courts and is admitted in the Appellate Division of the New York Supreme Court, First Judicial Department.  Ms. Sheth is also admitted to the United States District Court for the Southern District of New York and the United States District Court for the Eastern District of New York.  Manisha M. Sheth is currently licensed and in good standing to practice law in each jurisdiction to which she is admitted.

4.    Neither Manisha M. Sheth nor any member of the firm of Quinn Emanuel is under suspension or disbarment by any Court to which Manisha M. Sheth is admitted.

5.    Manisha M. Sheth is familiar with the Missouri Supreme Court Rules and will at all times abide by and comply with those rules as counsel herein.

6.    Thomas M. Harrison of the Van Matre Law Firm, P.C., located at 1103 E Broadway, Columbia, MO 65201, has agreed to act as counsel herein for Plaintiffs and to sponsor the motion for the *pro hac vice* admission of Manisha M. Sheth.

7.    Proof that Manisha M. Sheth has paid the fee required by Supreme Court Rule 6.01(n) is attached to this motion.

Electronically Filed - ST LOUIS COUNTY - July 20, 2026 - 02:24 PM

Wherefore, Thomas M. Harrison respectfully requests that this Court permit Manisha M. Sheth to practice specially in this case as attorney of record for Plaintiffs and to participate in the trial, proceedings and hearings herein.  A proposed order is attached hereto.

Date: July 20, 2026

*/s/ Thomas M. Harrison*
Thomas M. Harrison (Mo. Bar No. 36617)
Van Matre Law Firm, P.C.
1103 E Broadway, Columbia, MO 65201
Tel:  (573) 874-7777
tom@vanmatre.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2026, the foregoing was electronically filed with the Clerk of the Court for St. Louis County, Missouri using Missouri Case.Net which sent notification of such filing to all persons listed in the Court's electronic notification system. I further certify that on July 20, 2026, the foregoing was served via regular mail on the Defendant in this case at the following address: Regions Bank, Inc. c/o CSC-Lawyers Incorporating Service Company, Registered Agent, 221 Bolivar Street, Jefferson City, MO 65101.

*Thomas M. Harrison*
Thomas M. Harrison

3

Electronically Filed - ST LOUIS COUNTY - July 20, 2026 - 02:24 PM

**IN THE CIRCUIT COURT OF
ST. LOUIS COUNTY, MISSOURI**

| | | |
|---|---|---|
| Gregory A. DeLine, Amega Sales, Inc., | ) | |
| GKD Management L.P. d/b/a | ) | |
| A&G Commercial Trucking, | ) | |
| Midwest Mortgage Associates Corporation, | ) | |
| d/b/a Total Lending Concepts, Inc. | ) | |
| Amega Personnel Services Inc., | ) | |
| Transco Express Corp., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 26SL-CC04730 |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| Regions Bank Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Having reviewed Plaintiffs' Motion for <u>Pro</u> <u>Hac</u> <u>Vice</u> admission of Manisha M. Sheth, the Court finds that the motion complies with Rule 9.03 of the Missouri Supreme Court Rules. Accordingly, the Court sustains the motion and orders that Manisha M. Sheth be admitted <u>pro</u> <u>hac</u> <u>vice</u> in this cause.

Dated July \_\_\_, 2026

_____
Heather Rene Cunningham, Circuit Judge, Division 3

Electronically Filed - ST LOUIS COUNTY - August 07, 2026 - 01:01 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

| | |
|---|---|
| Gregory A. DeLine, Amega Sales, Inc., | ) |
| GKD Management L.P. d/b/a | ) |
| A&G Commercial Trucking, | ) |
| Midwest Mortgage Associates Corporation, | ) |
| d/b/a Total Lending Concepts, Inc. | ) Case No.: 26SL-CC04730 |
| Amega Personnel Services Inc., | ) |
| Transco Express Corp., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| Regions Bank Inc., | ) |
| | ) |
| Defendant. | ) |

**ENTRY OF APPEARANCE**

COMES NOW Stone T. Hendrickson of the law firm of Maynard Nexsen P.C., and hereby

enters his appearance on behalf of Defendant, Regions Bank, Inc.

Dated this 7th day of August 2026.

Respectfully submitted,

*/s/ Stone T. Hendrickson*_____
Stone T. Hendrickson          MO #74384
MAYNARD NEXSEN PC
(205) 254-1183
1901 Sixth Avenue North, Suite 1700
Birmingham, AL 35203
SHendrickson@maynardnexsen.com
*Attorney for Defendant Regions Bank, Inc.*

Electronically Filed - ST LOUIS COUNTY - August 07, 2026 - 01:01 PM

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 7, 2026, a true and correct copy of the above and foregoing Entry of Appearance was electronically filed with the Clerk of the Court by using the Missouri E-Filing System and said system will provide notification and access to all counsel of record.

*Stone T. Hendrickson*
Stone T. Hendrickson
